UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jacqueline Avritt and Alan Avritt,

       Plaintiffs,

v.                                                                          Civil No. 07-1817 (JNE/JJG)
                                                                            ORDER
Reliastar Life Insurance Company,

       Defendant.

---

Karl L. Cambronne, Esq., Chestnut & Cambronne, and John R. Harrington, Esq., Sulloway &
Hollis, PLLC, appeared for Plaintiffs Jacqueline Avritt and Alan Avritt.

Clark C. Johnson, Esq., Joseph L. Hamilton, Esq., and Marjorie A. Farris, Esq., Stites &
Harbison, PLLC, and Tracey L. Baubie, Esq., Kelly & Berens, PA, appeared for Defendant
Reliastar Life Insurance Company.

---

      Plaintiffs Jacqueline and Alan Avritt brought this action in the United States District

Court for the Western District of Washington against Defendant Reliastar Life Insurance

Company (Reliastar), alleging claims for breach of contract; tortious breach of duties of good

faith, loyalty, and fair dealing; breach of fiduciary duty; unjust enrichment; violation of the

Washington Consumer Protection Act; violation of the California Business and Professions

Code; and violation of the California Consumers Legal Remedies Act.  After the case was

transferred to this District in April 2007, the Court granted in part Reliastar's motion to dismiss.

The Court dismissed Plaintiffs' claims for breach of fiduciary duty; tortious breach of duties of

good faith, loyalty, and fair dealing; violation of the California Consumers Legal Remedies Act;

and violation of the California Business and Professions Code to the extent the alleged violations

were premised on breach of fiduciary duty or on tortious breach of duties of good faith, loyalty,

or fair dealing.  The case is before the Court on Plaintiffs' Motion for Class Certification.[1]  For

the reasons discussed below, the Court denies Plaintiffs' motion.

## I.   BACKGROUND

This case involves the sale of fixed deferred annuity policies by Northern Life Insurance

Company (Northern), which merged with Reliastar in 2002, to the putative class of plaintiffs,

who are primarily California public school employees.  A fixed deferred annuity policy is a type

of long-term investment product commonly issued by insurance companies.  During an initial

"deferral" period—that is, the period between the time the policy is purchased and the time

annuity payments begin—policyholders pay premiums to the insurance company in amounts,

and at times, of their choosing.  The policies at issue in this case required Northern to credit

interest to the policyholders' accounts at or above a guaranteed or "fixed" rate, typically three or

three and one-half percent.  After the deferral period, annuity payments commence at a time

determined by the contract, with the payment amounts dependent on the premiums paid and the

interest credited to the account, among other things.  Policyholders pay taxes on interest earned

only when they withdraw funds, and funds are available for early withdrawal subject to both

contractual penalties called "surrender fees" and potential tax penalties.

Alan Avritt purchased a fixed deferred annuity from Northern in 1992 through a financial

advisor.  He made deposits in varying amounts before withdrawing his funds from the annuity in

2006. Jacqueline Avritt, Alan Avritt's wife, purchased a fixed deferred annuity from Northern in

---

[1]      In addition, Plaintiffs have moved to strike the supplemental report of William M.
Gentry, and Reliastar has moved to submit new evidence and to exclude the declaration of
Robert E. Wilcox.  The Court grants Reliastar's motion to submit new evidence and denies the
remaining motions.  The Court considers the parties' submissions to the extent they are
admissible and relevant to the present motion.

1999 through a financial advisor.  She made numerous deposits until she ceased contributions in 2005 or 2006.

Plaintiffs' claims are related to Northern's practices for crediting interest on premiums in policyholders' accounts.  Plaintiffs' policies contain interest-crediting provisions such as the following:[2]

> We guarantee an effective yearly interest rate of three percent (3%).
> From time to time, interest greater than the guaranteed rate may be credited in a way set by our Board of Directors.  There may be more than one interest rate in effect at any time.

Consistent with the statement that "[t]here may be more than one interest rate in effect at any one time," Northern grouped premiums paid pursuant to annuity policies into "bands" based on when they were paid.  Premiums in the same band received the same interest-crediting treatment.  Interest rates varied from band to band, and the interest rates for each band were adjusted periodically.

Plaintiffs do not allege that "banding" or paying different interest rates on each band is objectionable in itself, and they do not allege that Northern failed to pay the minimum guaranteed amount of interest on any band.  Instead, Plaintiffs object to Northern's practice of paying higher rates on premiums in the most recent band, or "new money," and lower payments on older bands, or "old money."  This practice allegedly permitted Northern to increase its profitability by paying less interest on old money while still successfully marketing its annuities on the strength of the higher interest rates on new money.  Plaintiffs claim that Northern's interest-crediting practices breached the interest-crediting provisions in Northern's contracts, and they further allege that Northern failed to disclose its interest-crediting practices, made false and

---

[2]     Though the interest-crediting provisions of the contracts included in the class are not identical, Reliastar does not assert that the differences preclude class certification.

misleading statements about these practices, and submitted inadequate filings regarding these practices to state regulatory agencies.  Plaintiffs now propose certification of a class comprised of purchasers, holders, recipients, and beneficiaries of certain annuity policies that were issued by Northern between January 1, 1992, and October 1, 2002, provided that the holder of such individual policy or certificate was a resident of California at the time such policy or certificate was issued.

## II.   DISCUSSION

Rule 23 of the Federal Rules of Civil Procedure governs a district court's consideration of a motion for class certification.  In determining whether to certify a class action, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (quotation marks omitted).  The plaintiff bears the burden of demonstrating that the requirements of Rule 23 are satisfied. *Coleman v. Watt*, 40 F.3d 255, 259 (8th Cir. 1994). Decisions on whether to certify a class action are entrusted to the discretion of the district court. *See id.*

Before a class may be certified under Rule 23, plaintiff must demonstrate that:  (1) the class is so numerous that joinder of all the members is not practicable; (2) questions of law or fact are common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  In addition, a plaintiff must also demonstrate that class certification comports with one of the following subsections of Rule 23(b):  (1) that there is a risk of inconsistent adjudications if the class is not certified; (2) that injunctive or declaratory relief is appropriate respecting the class as a whole; or (3) that common questions of law or fact

predominate over questions affecting only individual members and that a class action would be superior to other available methods of adjudicating the controversy.  Fed. R. Civ. P. 23(b).

Plaintiffs argue that class certification is proper under both Rule 23(b)(2) and Rule 23(b)(3).  Assuming, without deciding, that Plaintiffs have satisfied Rule 23(a), the Court concludes that Plaintiffs fail to satisfy the requirements of either of these Rule 23(b) provisions.

## A.      Rule 23(b)(2)

A class may be certified under Rule 23(b)(2) if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Class certification pursuant to Rule 23(b)(2) is appropriate in cases where the plaintiffs seek monetary relief so long as injunctive or declaratory relief is the predominant relief sought for the class. *Maldonado v. Ochsner Clinic Found.*, 493 F.3d 521, 524 (5th Cir. 2007); *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 563 (8th Cir. 1982).  The determination of whether injunctive or declaratory relief predominates is within the discretion of the district court.  *See Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 164 (2d Cir. 2001).  While Plaintiffs request ancillary injunctive relief related to management of a portion of the money damages sought by the putative class, injunctive relief does not predominate, as Plaintiffs themselves indicated at the motion hearing.  Accordingly, the Court concludes that class certification under Rule 23(b)(2) is not warranted.

## B.      Rule 23(b)(3)

A class may be certified under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy."

    *1.*    *Predominance of common questions*

For class certification to be warranted under Rule 23(b)(3), "the issues in the class action

that are subject to generalized proof, and thus applicable to the class as a whole, must

predominate over those issues that are subject only to individualized proof." *Rutstein v. Avis*

*Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1233 (11th Cir. 2000) (quotation marks omitted). In

evaluating the predominance of common questions, a court should consider the factual setting of

the case and the evidence required to establish a prima facie basis for the putative class's claims:

> If, to make a prima facie showing on a given question, the members of a
> proposed class will need to present evidence that varies from member to member,
> then it is an individual question. If the same evidence will suffice for each
> member to make a prima facie showing, then it becomes a common question.

*Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). This inquiry tests "whether

proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*

*Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). While Plaintiffs' claims present some issues

that are common to the proposed class—Northern's interest-crediting practices, for example—

the Court concludes that Plaintiffs fail to meet their burden of establishing that common

questions predominate over individual questions.

a.    Contract claims[3]

Plaintiffs allege that Northern violated the express terms of its annuity contracts by failing to credit interest above the minimum guaranteed interest rate in a "way" set by Northern's Board of Directors.  Plaintiffs' contract claims, however, are much broader than this.  Plaintiffs further allege that Northern's interest-crediting practices breached the implied contractual covenant of good faith and fair dealing, which Plaintiffs assert required Northern to credit interest to policyholders' accounts in a specific manner that can now be calculated using "the policy account value(s), the date(s) of premium receipt, and the amount of the differential between the investment yield spread represented by the rate(s) actually credited and the contemporaneous new money yield spread."

The implied duty of good faith and fair dealing cannot be used to add new substantive terms to a contract or to contradict existing contractual terms.  *See Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991).  Instead, the implied duty of good faith and fair dealing imposes a requirement that discretion be exercised reasonably.  *See Scribner v. Worldcom, Inc.*, 249 F.3d 902, 910-11 (9th Cir. 2001) (applying Washington law); *Craig v. Pillsbury Non-Qualified Pension Plan*, 458 F.3d 748, 752 (8th Cir. 2006).  The express terms of the contracts at issue in this case do not contain any formulaic interest-crediting requirements.  As a result, if

---

[3]    When a federal court exercises diversity jurisdiction, the court generally applies the forum state's choice of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  However, when a case has been transferred to another forum, the choice of law rules of the transferor court continue to apply.  *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).  Washington law requires any party seeking to apply the law of another state to show that an actual conflict exists between the laws or interests of Washington and the law or interests of the other state.  *DC3 Entm't, LLC v. John Galt Entm't, Inc.*, 412 F. Supp. 2d 1125, 1138 (W.D. Wash 2006); *Burnside v. Simpson Paper Co.*, 864 P.2d 937, 942 (Wash. 1994).  In the absence of any conflict, it is presumed that Washington law applies.  *Burnside*, 864 P.2d at 942.  No party has established any such conflict, so the Court applies Washington law to Plaintiffs' common law claims.

Plaintiffs are to establish their theory of recovery and proposed measure of damages, they must

prove that such a formulaic method of crediting interest is the necessary result of reasonable

exercise of the discretion accorded to Northern under the contracts' interest-crediting provisions.

Plaintiffs argue that the contractual duty of good faith and fair dealing is governed by an

objective standard[4] and that therefore Northern's contractual obligations can be established

without resort to evidence of individual class members' cases.  The duty of good faith and fair

dealing "exist[s] to promote 'faithfulness to an agreed common purpose and consistency with the

justified expectations of the other party.'"  *Frank Coluccio Constr. Co. v. King County*, 150 P.3d

1147, 1155 (Wash. Ct. App. 2007) (quoting Restatement (Second) of Contracts § 205 cmt. a

(1979)).  Assuming that any expectation or purpose protected by the contractual duty of good

faith and fair dealing must be objectively reasonable, Plaintiffs fail to cite any authority

indicating that such expectation or purpose need not also have been an *actual* expectation or

purpose of the contracting party asserting breach.  *Cf. Cobank, ACB v. Reorganized Farmers Co-*

*op. Ass'n*, 170 F. App'x 559, 566 (10th Cir. 2006) (unpublished) (discussing, in the context of

reasonable or justified expectations, party's lack of actual expectation that other contracting

party would undertake certain conduct and affirming summary judgment dismissing claim for

breach of duty of good faith and fair dealing).  Because Plaintiffs fail to establish that a class

member may recover for breach of the duty of good faith and fair dealing if his or her

expectations were consistent with Northern's interest-crediting practices, the Court anticipates

that evidence of individual class members' expectations regarding interest crediting will be

relevant.  *Cf. Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 244 F. Supp. 2d 1250, 1268

(D. Kan. 2003) ("[E]vidence concerning what the parties discussed prior to executing the

---

[4]        Plaintiffs do not cite any Washington authority for this proposition.

agreement, to the extent such evidence, as here, does not contradict the agreement, is entirely relevant to whether defendants breached the covenant of good faith and fair dealing because the parties' reasonable expectations at the time of the contract formation determine the reasonableness of the challenged conduct.").  In this case, Northern's interest-crediting practices do not appear to have been inherently objectionable but instead were allegedly undisclosed or misrepresented, and class members could have obtained information about interest crediting through point-of-sale interactions or publicly available materials regarding annuity purchases. As a result, the expectations of the individual members of the putative class can be expected to be varied rather than largely uniform.  Accordingly, with respect to Plaintiffs' contract claims, the Court cannot conclude that common questions predominate.

> **b.**     Restitution, imposition of constructive trust, and unjust enrichment

Plaintiffs devote little attention to this claim in this motion.  The Court concludes that Plaintiffs have not demonstrated that questions of law or fact common to the class predominate over any questions affecting only individual members.

> **c.**     Violations of the Washington Consumer Protection Act (WCPA)

The WCPA states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."  Wash. Rev. Code Ann. § 19.86.020 (West 1999).  The WCPA provides that "any person" who is injured by a violation of the WCPA may bring suit under the Act.  *Id.* § 19.86.090 (West 1999 & Supp. 2009).  To prevail on a private WCPA claim, a private plaintiff must show "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered."  *Indoor Billboard/Wash., Inc. v. Integra Telecom of*

*Wash., Inc.*, 170 P.3d 10, 17 (Wash. 2007).  Under the "causal link element," the unfair or

deceptive practice must be a but-for cause of the plaintiff's injuries.  *See id.* at 22.

Regarding their WCPA claim, Plaintiff generally refer to practices that exhibit "illegality,

unfairness and deceptiveness" without specifying what those practices are.  Review of Plaintiffs'

Complaint suggests that Plaintiffs' WCPA claim relates primarily to alleged failures to disclose

information and allegedly false or misleading statements or filings.  Because Plaintiffs' WCPA

claim centers on allegations of non-disclosure and misrepresentations, evidence of reliance by

individual class members will be relevant to proving causation.  *See In re St. Jude Med., Inc.*,

522 F.3d 836, 841 (8th Cir. 2008) (indicating that such evidence "is highly relevant and

probative on the question whether there is a causal nexus between alleged misrepresentations and

any injury"); *Indoor Billboard*, 170 P.3d at 22 (stating that payment of an illegal invoice is not in

itself enough to establish causation and that "all other relevant evidence on the issue of

proximate cause" should be considered).[5]

---

[5]    In their reply memorandum, Plaintiffs for the first time argue that their proposed class
may be certified on a "price inflation" theory of causation for their WCPA claim.  *Cf. Berbig v.
Sears Roebuck & Co.*, 568 F. Supp. 2d 1033, 1040 n.10 (D. Minn. 2008) ("Generally, the Court
does not consider arguments raised for the first time in a Reply.").  In any event, no Washington
state court appears to have applied such a theory of causation to a WCPA claim, *see Kelley v.
Microsoft Corp.*, 251 F.R.D. 544, 559 n.3 (W.D. Wash. 2008), and the courts of other states have
rejected similar theories, *see id.* at 558-59 (citing cases).  Plaintiffs bear the burden of
demonstrating that class certification is warranted, and the Court concludes that Plaintiffs fail to
demonstrate that a price inflation theory of causation can be used to make out a prima facie
WCPA claim so that any common questions such a theory might present can be considered in the
Court's Rule 23(b)(3) inquiry.  While the plaintiff class in *Kelley v. Microsoft* was permitted to
develop a price inflation theory of causation regarding its WCPA claim because the court was
"not convinced that such a theory would be rejected by Washington courts," 251 F.R.D. at 559,
this Court finds *Kelley* unpersuasive:  *Kelley* appears to have permitted the plaintiff class to
avoid its burden of proof by conflating the legal sufficiency of the class's proposed theory of
recovery, which must be examined to determine whether common questions predominate, with
the factual merits of its case, which should not be examined at the class certification stage, *see id.*

d.        Violations of the California Business and Professions Code

The California Business and Professions Code's unfair competition law ("UCL")

prohibits, among other things, "unlawful, unfair or fraudulent business act[s] or practices[s]."

Cal. Bus. & Prof. Code § 17200 (West 2008).  When a UCL claim is based on "unlawful"

conduct, the UCL "'borrows' violations of other laws and treats these violations, when

committed pursuant to business activity, as unlawful practices independently actionable" under

the UCL and subject to its distinct remedies.  *Paulus v. Bob Lynch Ford, Inc.*, 43 Cal. Rptr. 3d

148, 162 (Cal. Ct. App. 2006).  The UCL's purpose is "to protect both consumers and

competitors by promoting fair competition in commercial markets for goods and services."

*Kasky v. Nike, Inc.*, 45 P.3d 243, 249 (Cal. 2002).  Accordingly, its scope is broad.  *Id.*  To

prevail on a UCL claim, a plaintiff must show, among other things, that he or she suffered an

injury in fact that was "caused by" the complained-of business practice, which requires "a

showing of a causal connection or reliance on the alleged misrepresentation."  *Hall v. Time Inc.*,

70 Cal. Rptr. 3d 466, 471-72 (Cal. Ct. App. 2008).

Plaintiffs argue that their allegations of breach of contract and unjust enrichment may

form the basis for recovery under the UCL.  *See Puentes v. Wells Fargo Home Mortgage, Inc.*,

72 Cal. Rptr. 3d 903, 909 (Cal. Ct. App. 2008) ("[A] breach of contract may . . . form the

predicate for [UCL] claims, provided it also constitutes conduct that is unlawful, or unfair, or

fraudulent." (quotation marks and emphasis omitted)).  As discussed above, Plaintiffs have not

met their burden of establishing that common questions of law or fact predominate over

individual questions with respect to either their contract claims or their claims for unjust

enrichment.

Plaintiffs further allege that Reliastar is liable under the UCL for a variety of other

conduct, including violations of a multitude of state statutes and regulations, *e.g.*, Cal. Ins. Code

§ 331 (West 2005) (addressing the effect of "[c]oncealment" of material information); *id.* § 332

(West 2005) ("Each party to a contract of insurance shall communicate to the other, in good

faith, all facts within his knowledge which are or which he believes to be material to the contract

and as to which he makes no warranty, and which the other has not the means of ascertaining.");

*id.* § 780 (West 2005) (forbidding an "insurer" from making misrepresentations regarding "[t]he

terms of a policy issued by the insurer"); *id.* § 781 (West 2005) (prohibiting a "person" from

making misrepresentations to induce another person to take out a "policy of insurance"); Wash

Rev. Code Ann. § 48.05.250 (West 1999 & Supp. 2009) (mandating that insurers file "a true

statement of its financial condition, transactions, and affairs" with the Washington Office of the

Insurance Commissioner); *id.* § 48.30.040 (West 1999) ("No person shall knowingly make,

publish, or disseminate any false, deceptive or misleading representation or advertising in the

conduct of the business of insurance, or relative to the business of insurance or relative to any

person engaged therein."); *id.* § 48.30.090 (West 1999) (forbidding "misrepresentation of the

terms of any policy or the benefits or advantages promised thereby").  Regardless of whether

such conduct is labeled "unlawful," "unfair," or "fraudulent," the conduct appears to be primarily

informational in nature, dealing mainly with alleged misrepresentations, failures to disclose, and

false regulatory filings.  Accordingly, evidence of reliance by individual class members will be

relevant to Plaintiffs' claims.  *See Hall*, 70 Cal. Rptr. 3d at 471 n.2 ("In a fraud case, justifiable

reliance is the same as causation."); *In re Firearm Cases*, 24 Cal. Rptr. 3d 659, 672 (Cal. Ct.

App. 2005) ("Because the acts of the lender did not deceive the borrowers, causation was absent and the practice could not be deemed unfair.").[6]

        e.       Defenses

Reliastar asserts that individual class members' claims may be barred by the statute of limitations or subject to the defenses of ratification, estoppel, waiver, or laches. Reliastar further argues that these matters are subject to individualized, rather than common, proof. The Court agrees.

Plaintiffs' proposed class period runs from January 1, 1992, to October 1, 2002, and this action was filed on October 3, 2006. Given the approximately fourteen years between the start of the class period and the commencement of this action, a significant number of individual class members' claims may be time-barred. *See* Cal. Bus. & Prof. Code § 17208 (West 2008) (stating that the UCL has a four-year limitations period); Wash. Rev. Code Ann. § 4.16.040 (West 2005 & Supp. 2009) (stating that contract claims are subject to a six-year limitations period); *id.* §

---

[6]     As with their WCPA claims, Plaintiffs argue in their reply memorandum that a class may be certified with respect to their UCL claims under a "price inflation" theory of causation. *Cf. Berbig v. Sears Roebuck & Co.*, 568 F. Supp. 2d 1033, 1040 n.10 (D. Minn. 2008) ("Generally, the Court does not consider arguments raised for the first time in a Reply."). Plaintiffs have identified no case in which a California court applied such a theory of causation to a UCL claim. *Cf. Hall*, 70 Cal. Rptr. 3d at 471 n.2; *In re Firearm Cases*, 24 Cal. Rptr. 3d at 672. To the contrary, the California Court of Appeals has held that a plaintiff must demonstrate actual reliance before he or she may recover under the UCL for false or misleading representations, and the California Supreme Court granted review of the decision, meaning the issue is unsettled. *See Pfizer Inc. v. Superior Court*, 45 Cal. Rptr. 3d 840, 851-53 (Cal. Ct. App. 2006), *rev. granted*, 146 P.3d 1250 (Cal. Nov 01, 2006); Cal. R. Ct. 1105 ("[A]n opinion is no longer considered published if the Supreme Court grants review."); Cal. R. Ct. 1115 (indicating limitations on use of unpublished opinions). The Court concludes that Plaintiffs have failed to demonstrate that a price inflation theory of causation can be used to make out a prima facie UCL claim so that any common questions such a theory might present can be considered in the Court's Rule 23(b)(3) inquiry. The Court's conclusion is unaffected by *New England Carpenters Health Benefits Fund v. First Databank, Inc.*, which is cited by Plaintiffs and mentions a UCL claim. 244 F.R.D. 79, 85 (D. Mass. 2007) (certifying a class where "[t]here is no allegation of any disparate knowledge by class members").

19.86.120 (West 1999) (stating that the WCPA has a four-year limitations period); *Davenport v. Wash. Educ. Ass'n*, 197 P.3d 686, 704 (Wash. Ct. App. 2008) (indicating that unjust enrichment claims are subject to a three-year limitations period (citing Wash. Rev. Code Ann. § 4.16.080(3) (West 2005)).  Determining whether class members' claims are time-barred will require individualized proof, as the accrual date of a class member's claims for statute-of-limitations purposes will typically depend on when each individual class member bought his or her annuity and on his or her knowledge of Northern's practices.  *See, e.g.*, *Dep't of Labor & Indus. v. Estate of MacMillan*, 814 P.2d 194, 198 (Wash. 1991) ("The discovery rule tolls the applicable statutes of limitations until such time as the plaintiff discovers, or reasonably should have discovered, the essential elements of his or her cause of action.").  Similarly, the Court concludes that the fourteen-year gap between the start of the class period and the filing of the present action creates a serious possibility that the defenses of ratification, estoppel, waiver, and laches may be applicable to the claims of individual class members.  As with statutes of limitations, determination of whether these defenses apply will require individualized proof.  *See Ward v. Richards & Rossano, Inc.*, 754 P.2d 120, 127-28 (Wash. Ct. App. 1988) (discussing ratification, estoppel, waiver, and laches and indicating that applicability of these defenses generally depends on the knowledge of the party against whom they are asserted).

> 2.      *Superiority of class action*

A court may certify a class under Rule 23(b)(3) only if it concludes that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Factors relevant to the court's inquiry into superiority include "the class members' interests in individually controlling the prosecution or defense of separate actions," Fed. R. Civ. P. 23(b)(3)(A), "the extent and nature of any litigation concerning the controversy

already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B), "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," Fed. R. Civ. P. 23(b)(3)(C), and "the likely difficulties in managing a class action," Fed. R. Civ. P. 23(b)(3)(D).

Plaintiffs have not established that a class action is superior to other methods of adjudication. The need for individualized proof, discussed above, would render management of a class action difficult and reduce or eliminate the efficiencies typically associated with class litigation. *See In re St. Jude Med.*, 425 F.3d at 1121 ("A suit could become unmanageable and little value would be gained in proceeding as a class action . . . if significant individual issues were to arise consistently." (quotation marks omitted)); *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 342 (4th Cir. 1998) ("[W]hen the defendant's affirmative defenses (such as . . . the statute of limitations) may depend on facts peculiar to each plaintiff's case, class certification is erroneous." (quotation marks omitted)).

Moreover, a similar action, *Curtis v. Northern Life Insurance Co.*, No. 01-2-18578–1 (Wash. Super. Ct. filed July 2, 2001), is pending in Washington state court. In that case, the trial court declined to certify a nationwide class of plaintiffs, later certified a Washington class only, and ultimately granted summary judgment in favor of Northern. The Washington Court of Appeals reversed the trial court, held that summary judgment was not warranted and that certification of a nationwide class of plaintiffs was appropriate, and remanded to the trial court for further consideration.[7] *Curtis v. N. Life Ins. Co.*, No. 61372-3-I, 2008 WL 4927365 (Wash.

---

[7]     The Court discerns no reason why interlocutory rulings in the not-yet-completed *Curtis* case should be binding in this action, *see Gurley v. Hunt*, 287 F.3d 728, 731 (8th Cir. 2002) (indicating that final judgment on the merits in a previous action is a prerequisite to application of res judicata), and no party has asked the Court to stay litigation in favor of the *Curtis* action,

Ct. App. Nov. 17, 2008).  Accordingly, the existence of the *Curtis* action, filed years before the present action, indicates that proceeding with class litigation in this case is not warranted.  *See In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1088 (6th Cir. 1996); *Becker v. Schenley Indus., Inc.*, 557 F.2d 346, 348 (2d Cir. 1977) ("The district court's determination not to permit duplicative class actions, to avoid undue burdens on the parties and on judicial resources, and to eliminate the possibility of inconsistent results, cannot be overturned.").

Finally, concerns about the feasibility of individual lawsuits are mitigated by the fact that Plaintiffs may be eligible for recovery of attorney fees on some of their claims.  *See* Wash. Rev. Code Ann. § 19.86.090 (providing for the recovery of "the costs of the suit including a reasonable attorney's fee"); *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 328 (4th Cir. 2006); *cf.* Cal. Civ. Proc. Code § 1021.5 (West 2007) (indicating that a court may, under certain circumstances, award attorney fees to "to a successful party . . . in any action which has resulted in the enforcement of an important right affecting the public interest").

## III.      CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.     Plaintiffs' Motion for Class Certification [Docket No. 67] is DENIED.

2.     Reliastar's motion to exclude [Docket No. 99] is DENIED.

3.     Reliastar's motion for leave to submit new evidence [Docket No. 115] is GRANTED.

---

*cf. Smart v. Sunshine Potato Flakes, L.L.C.*, 307 F.3d 684, 687 (8th Cir. 2002) (noting a "federal court's 'virtually unflagging obligation' to exercise its jurisdiction").

4.      Plaintiffs' motion to strike [Docket No. 121] is DENIED.

Dated:  February 23, 2009

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge